**ABBEY VILLAS DEVELOPMENT CORP. and Treasurer of Allen County, Appellant–Defendants,**

v.

**SITE CONTRACTORS, INC. and S.O. Lougheed & Associates, Inc., Appellees–Plaintiffs,**

and

**Treasurer of Allen County, Appellee–Defendant.**

No. 02A04–9807–CV–345.

Court of Appeals of Indiana.

Sept. 17, 1999.

William D. Swift, Patricia J. Pikel, Swift & Finlayson, Fort Wayne, Indiana, Attorneys for Appellants.

Mark A. Warsco, James T. Young, Warsco, Brogan & Strunk, Eric E. Snouffer, Snouffer & Snouffer, John O. Feighner, Haller & Colvin, Fort Wayne, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Abbey Villas Development Corporation ("Developer") appeals the judgments entered after a bench trial in favor of Appellees–Plaintiffs S.O. Lougheed & Associates, Inc. ("Engineer") and Site Contractors, Inc. ("Contractor") in this action to foreclose mechanics liens

filed against Developer's property.[1] We affirm in part, reverse in part, and remand with instructions.

### Issues

Developer raises seven issues. Because we reverse in part, we address the following restated issues only:

I. Whether the trial court's determination that Engineer's mechanic's lien had been timely filed was clearly erroneous.

II. Whether the trial court's determination that Developer was in breach of its contract with Contractor for failing to pay Contractor's invoices when submitted was clearly erroneous.

III. Whether Contractor's mechanic's lien was void because its claim had originally been overstated.

IV. Whether the trial court's calculation of Contractor's damages was supported by sufficient evidence.

V. Whether the trial court's calculation of Contractor's attorneys' fees incurred in the foreclosure of the mechanic's lien was supported by sufficient evidence.

### Facts

#### A. Introduction and Identification of Parties

The dispositive facts are largely undisputed. The facts have been taken from the trial court's findings entered in conjunction with its judgment wherever possible. (R. 518–28). Developer is owned and operated by Joseph L. Sullivan ("Sullivan") and is in the business of developing and marketing residential subdivisions. (R. 518–20, 2617). Contractor is in the business of excavating earth for the purpose of installing various infrastructure for residential and commercial projects. (R. 518). Engineer is an engineering and environmental consulting firm. (R. 518). Developer owned the subject real estate which it desired to develop into a residential subdivision known as Abbey Place Villas. (R. 518–19).

#### B. Contract and Dispute with Engineer

Developer hired Engineer to prepare the master development plan, prepare engineering plans and specifications, award contracts, and stake out the major control points for the construction. (R. 520). Engineer was not hired to conduct inspections or serve as construction manager on the project. (R. 520). Engineer was to be paid a flat fee of $15,000.00 for its services. (R. 520).

However, Engineer performed additional services for Developer not called for in their contract. (R. 521). Engineer billed Developer separately for the additional services. (R. 521). Eventually, Developer informed Engineer that it would not be paid for the additional services. (R. 522). Thus, in January of 1997, Engineer ceased all work on the project. (R. 522, 992). At that point, Engineer's bill to Developer for the services beyond those covered by the $15,000.00 contract amounted to $6,872.00. (R. 992).

In March of 1997, Developer's *attorney* contacted Engineer to inquire about the status of the project and to get Engineer to perform additional services. (R. 2526). As Engineer did not know the status of the project at that point, it "dug out the plans" because "the file had been long, long set aside" and began to investigate the matter. (R. 2527). Engineer called Sullivan to ask if Engineer would be paid for the additional services requested. (R. 2530). Sullivan informed Engineer that he had already been compensated under their contract and would not be paid any additional amounts. (R. 2530). Although Engineer billed Developer for four hours in March, Engineer did not provide Developer with any information or other benefit from the services performed. (R. 2532–33). Engineer testified that he believed that the services requested and performed were

---

1. The Treasurer of Allen County is listed as a party to this action because it had tax liens against Developer's property. (R. 135–36).

The Treasurer did not participate in this appeal.

beyond the scope of the original contract. (R. 2531).

Engineer filed its mechanic's lien on May 9, 1997, to secure the payment of all amounts billed over the original $15,000.00 flat fee contract. (R. 2525). The trial court determined that the lien had been timely filed based on the billing generated in March. (R. 521). The trial court found that Developer owed Engineer $7,188.00 for the additional services rendered and entered judgment for that amount. (R. 523). The trial court also awarded attorney's fees in the amount of $19,294.15 in conjunction with the foreclosure of Engineer's mechanic's lien. (R. 523).

### C. Contract and Dispute with Contractor

Contractor submitted a written proposal, which Developer accepted, which provided in pertinent part as follows:

We are organized and exist under the laws of the State of Indiana and hereby submit to the [Developer], a proposal to perform the work for the Utility and Earthwork, and Streets in strict accordance with the Plans and Specifications within the time set forth and at the stated prices . . . .

Our schedule of construction for the completion of the described work and appurtenances based upon the given start date is as follows:

1. Award Contract—Start construction

2. Complete Sanitary Sewer, Water Main, Storm Sewer and Earthwork Scope as described ready to turn over to Paving Contractor 60–90 Total Calendar Days.

3. Complete curbs, stone, asphalt base and surface 45–60 Total Calendar Days after sub-base is turned over.

We are pleased to submit the following Total Price (Lump Sum and/or Unit Price extension) based upon the plans and specifications for this project.

Total Price includes fees, permits, equipment, labor, materials, taxes, profit and overhead for installed items, complete and ready for their intended uses:

TOTAL PRICE (LUMP SUM AND/OR UNIT PRICE EXTENSION) FOR:

. . . [an aggregate of $382,546.10]

The total amount paid by the owner will be adjusted based upon the Itemized Bid Proposal Forms attached and the as-built quantities installed.

The attached Itemized Bid Proposal of unit prices and extensions will be used to adjust the total amount paid if work has been added or subtracted from original scope of work. Prices include fees, permits, equipment, labor, materials, taxes, profit and overhead for complete and installed items.

. . . .

This proposal if accepted shall be executed as part of a standard contract. Payment will be made at 90% upon completion of the work with the 10% balance being released when work is accepted by the appropriate Agency and/or accepted by Owner.

(R. 651–52). The written agreement also provided:

The utilities extension work is proposed to be *started in August, 1996,* and *completed,* ready for the Utility Center's Acceptance, *on or before October 15, 1996.* The site grading and street subgrade shall be rough graded as quickly as possible with the streets being ready for stone on or before September 1st, 1996 Curbs are to be installed and *asphalt streets are to be completed on or before October 1, 1996.*

. . . .

A schedule to complete the project phases are requested and will be a consideration in awarding the contract.

The Bid Documents contain a Total Price Amount (Summation of the Unit Price Extension). The Contractor is instructed to included [sic] everything necessary to safely and fully complete the project to be accepted by the Allen

County Agencies and Utility Center for its intended uses.

. . . .

PHASED CONSTRUCTION: The project shall proceed to its completion as quickly as possible. The contractor is advised that the lots 45 through 58 are to be ready for slab construction and utility connect as soon as humanly possible after the awarding of the contract. *SEQUENCE AND SPEED OF WORK*—THE ENGINEER SHALL HAVE THE POWER TO DIRECT THE ORDER AND SEQUENCE OF THE WORK. IF AT ANY TIME BEFORE THE COMMENCEMENT OR DURING THE PROGRESS OF THE WORK, THE MATERIALS AND APPLIANCES USED OR TO BE USED APPEAR TO THE ENGINEER AS INSUFFICIENT OR IMPROPER FOR SECURING THE QUANTITY OF WORK REQUIRED IN A REASONABLE TIME, THE ENGINEER MAY REQUIRE THE CONTRACTOR TO ADD OR REPLACE EQUIPMENT OR PERSONNEL TO ACCOMPLISH THE WORK IN THE TIME ALLOWED.

(R. 632, 635, 637, 646) (emphasis original).

Developer accepted Contractor's proposal on August 20, 1996. (R. 523). Thus, as the trial court found, according the terms of the contract, Contractor was to finish its work within the ninety (90) day period or by November 17, 1996. (R. 523). Despite Developer's and Engineer's continuous prodding, Contractor did not meet the deadlines set in the contract. (R. 524, 671, 2534). Although Contractor submitted several periodic invoices totaling almost $200,000.00, Developer paid Contractor only $70,000.00 on October 30, 1996, upon Engineer's suggestion that a payment might encourage Contractor to finish the job in a timely manner. (R. 524, 2534). Developer ordered Contractor off the job on December 3, 1996. (R. 524, 671, 2534). At that point, Contractor had completed 70% of the job. (R. 524, 526).

Contractor filed a mechanic's lien against Developer's property in the amount of $166,510.09. (R. 62, 524). The amount of this lien was overstated by more than $38,000.00 because certain amounts had been billed on other invoices and some amounts claimed had been paid by Developer directly to the subcontractors. (R. 2961–62, 2096, Appellant's brief at 28). Contractor presented evidence to the effect that the overstatements were the result of innocent and inadvertent clerical errors which were reported to Developer upon discovery. (R. 2096–97).

At the beginning of the trial which spanned four and one-half days, the trial court and the attorneys held the following colloquy regarding the procedure to be implemented in litigating the issue of attorneys' fees:

Contractor's Attorney: Your Honor, if I might, again, just for the purposes of the record, do I understand the Court's instructions accurately, that we are to submit any Attorney Fees matters by Affidavit after the trial?

Court: Correct. Correct.

· · ·

Developer's Attorney: And, that we would of course reserve the right to argue reasonableness of the same?

Court: Correct. Those would be due . . . the same [day] that the Proposed Findings. . . . Let me enter that. So any evidence regarding Attorney's Fees shall be submitted by Affidavit thirty days after the conclusion of the evidence.

(R. 620). Pursuant to the trial court's instructions, Contractor's attorney submitted an affidavit supported by itemized billing evidencing $41,920.60 in attorneys' fees and expenses. (R. 449–89). As Developer also claimed an entitlement to attorney fees, it submitted the affidavit of its attorney supported by itemized billing evidencing over $56,000.00 in fees. (R. 490–517).

As will be discussed below, Developer claimed that Contractor had breached the contract by failing to complete the project on time. Contractor claimed that Developer had breached the contract by failing to pay the invoices submitted in a timely manner. Thus, the litigation centered upon the interpretation of the following contract provision (as set out above):

Payment will be made at 90% upon completion of the work with the 10% balance released when the work is accepted by the appropriate Agency and/or accepted by Owner.

(R. 524).

In its findings, the trial court accepted the testimony of various witnesses to the effect that "in the construction industry this provision is interpreted to mean that the contractor is to be paid 90% of any invoice at the time of submission with 10% retained." (R. 525). Accordingly, the trial court found that Developer had breached the contract by failing to pay Contractor's invoices in a timely manner and found that Developer was liable to Contractor for the reasonable value of the services rendered. (R. 526). The trial court calculated the reasonable value of the services rendered by Contractor by multiplying the total contract price of $240,764.08 by the percentage of the project that Contractor completed, 70%, to arrive at the amount of $168,534.85. (R. 526). The trial court deducted the payments made by Developer and entered judgment in favor of Contractor for $81,705.85. (R. 526). The trial court also awarded Contractor attorney's fees and expenses in the amount of $41,-920.60 in conjunction with the foreclosure of the mechanic's lien. (R. 527).

### Discussion and Decision

#### A. Standard of Review— Trial Court Findings

As stated in *Indiana–American Water Co. Inc. v. Seelyville,* 698 N.E.2d 1255, 1258 (Ind.Ct.App.1998):

In the present case, a motion for specific findings was filed pursuant to Ind. Trial Rule 52(A). The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. On appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). In reviewing a judgment where a motion for specific findings has been filed, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment is clearly erroneous only when the judgment is unsupported by the findings of fact and conclusions entered on the findings. Findings of fact are clearly erroneous only when the record lacks any evidence to support them. In reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility.

Nevertheless, where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and, even if erroneous, cannot constitute the basis for reversal. Moreover, we may affirm the judgment on any legal theory supported by the findings even where a motion for specific findings has been filed. However, before affirming on a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings.

(citations omitted). A trial court's judgment will be considered clearly erroneous only if a review of the entire record leaves the appellate tribunal with a definite and firm conviction that a mistake has been made. *Mutual Hospital Services, Inc. v.*

*Burton,* 695 N.E.2d 641, 643 (Ind.Ct.App. 1998).

### B. Mechanic's Liens—Generally

■ Our supreme court has enunciated the purpose of Indiana's mechanic's lien legislation as follows:

> The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and material furnished by others, without recompense.

*Moore–Mansfield Construction Co. v. Indianapolis, Newcastle & Toledo Railway Co.,* 179 Ind. 356, 101 N.E. 296, 302 (1913); *see also, Beneficial Finance Co. v. Wegmiller Bender Lumber Co., Inc.,* 402 N.E.2d 41, 45 (Ind.Ct.App.1980). The core function of mechanic's lien statutes is to provide a method for contractors, subcontractors, laborers, and materialmen who have increased the value of a property owner's land but who have not been paid to obtain remuneration. *Premier Investments v. Suites of America, Inc.,* 644 N.E.2d 124, 131 (Ind.1994).

■ As the Indiana statutes governing the filing of a notice of intention to hold a mechanic's lien under IND.CODE §§ 32–8–3–1, –3 are in derogation of the common law, their provisions must be strictly construed. *Riddle v. Newton Crane Service, Inc.,* 661 N.E.2d 6, 9 (Ind. Ct.App.1996). Lien claimants have the burden to prove that their claim is within the scope of the statute. *Haimbaugh Landscaping, Inc. v. Jegen,* 653 N.E.2d 95, 99 (Ind.Ct.App.1995). However, once it has been determined that a materialman has brought himself within the scope of the statute, the remedial provisions of the legislation should be liberally construed in order to accomplish the purposes of the

statute. *Id.; Beneficial Finance Co.,* 402 N.E.2d at 45.

### I. Engineer's Mechanic's Lien

#### A. Developer's Contention

Developer asserts that the trial court erred in determining that Engineer's mechanic's lien was timely filed. Developer points out that Engineer quit working on the project in January of 1997. Developer asserts that the additional billing generated by *its attorney's* inquiry in March of 1997 was, at most, merely incidental to Engineer's work under the contract. Thus, Developer asserts that Engineer's mechanic's lien, filed in May of 1997, was untimely. We agree.

#### B. Timely Filing—Sixty Days

■ The filing of a notice of intention to hold a mechanic's lien is timely if filed within sixty (60) days of the date when the last work is performed by the claimant. IND.CODE § 32–8–3–3(a); *Riddle,* 661 N.E.2d at 8–9. However, the sixty day period cannot be extended through the performance of an act incidental to the contract. *Id.* The right to such a lien cannot be revived through the performance of some act incidental to the work which is not done with the intention of completing the job. *Gooch v. Hiatt,* 166 Ind.App. 521, 337 N.E.2d 585, 588 (1975). A mechanic's lien may appropriately be based upon work which was actually called for under the contract or continuing employment relationship performed with the intention of completing the job. *Miller Monuments, Inc. v. Asbestos Insulating & Roofing Co.,* 134 Ind.App. 48, 185 N.E.2d 533, 535 (1962). However, additional work which is not performed to correct a problem with the work originally contemplated under the contract, but which is performed either gratuitously or under a new contract to make repairs or perform services not contemplated under the original contract, will not serve as a basis for a mechanic's lien for work performed under the original contract. *Id.*

### C. Analysis

The record in the present case is quite clear that, by January of 1997, a dispute had developed between Developer and Engineer about the scope of the work Engineer was to perform under the original $15,000.00 flat fee contract. Engineer believed, and the trial court found, that Engineer had fulfilled his obligations under that contract by January and thus any additional services were beyond the scope of the original contract and would require additional remuneration. Engineer ceased working on the project and put the plans away until contacted by Developer's *attorney* about performing additional services. Although Engineer dug up the plans and generated four hours of billing, Sullivan confirmed that Engineer would not be paid for any additional services. Thus, Engineer did not provide Developer with any information or fruits of the work which generated the March billing.

As of January 1997, Engineer had refused to perform additional services without a new contract or promise from Developer regarding additional compensation. Under these circumstances, we must conclude that the billing generated in March as the result of the inquiry made by Developer's attorney was not performed with the intention of completing the original contract but was, at most, merely incidental to the original contract.

Our review of the entire record has left us with a definite and firm conviction that a mistake has been made. *See Mutual Hospital Services,* 695 N.E.2d at 643. Under the circumstances, we must conclude, as a matter of law, that the filing of Engineer's mechanic's lien may not appropriately be based upon the services performed in March. Thus, we must conclude that Engineer's mechanic's lien which was filed in May was outside the sixty day statutory period and the trial court's determination to the contrary was clearly erroneous. *See id.* Therefore, we reverse and remand with instructions that the trial court enter new findings consistent with this opinion and modify its judgment with respect to the competing claims of Engineer and Developer.

### II. Contractor's Mechanic's Lien

#### A. Developer's Contention

Developer asserts that the contract is unambiguous and provides that Contractor would complete its work within ninety days at which time it would be paid the total price/lump sum less a 10% retainage. Thus, Developer argues the trial court erred in admitting evidence of the customs and practices of the construction industry and concluding that Developer breached the contract by failing to pay Contractor's invoices upon submission.

#### B. Contract Interpretation

As stated in *Peoples Bank & Trust Co. v. Price,* Ind.Ct.App., 714 N.E.2d 712 (1999):

> Our supreme court has recently confirmed its commitment to advancing the public policy in favor of enforcing contracts. Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. Thus, as a general rule, the law allows competent adults the utmost liberty in entering into contracts which, when entered into freely and voluntarily, will be enforced by the courts. Nevertheless, despite the very strong presumption of enforceability, courts have refused to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana.
>
> . . . .
>
> Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the intent of the parties is determined from the four corners of that

instrument. If, however, a contract is ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact finder. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. The contract is to be read as a whole when trying to ascertain the intent of the parties. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. Moreover, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will, as a general proposition, be construed together.

Parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. The existence of express terms in a valid written contract precludes the substitution of any implied terms regarding the subject matter covered by the express terms. This principle is especially true in Indiana because our courts will zealously defend the freedom to contract.

(citations omitted). An ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation. *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 471 (Ind.Ct.App.1996). A contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id.*

### C. Analysis

As noted above, the provision regarding when payment was due from Developer reads in pertinent part as follows: "[p]ayment will be made at 90% upon completion of *the work* ...." (R. 524) (emphasis added). Contractor urges that this phrase means that payment is due upon the completion of "the work invoiced," while Developer contends that this phrase means payment is due upon completion of the entire project. We hold that both interpretations are reasonable and that reasonably intelligent persons would honestly differ as to the meaning of the phrase. Therefore, the provision regarding payment is ambiguous and the trial court appropriately accepted testimony to the effect that "in the construction industry this provision is interpreted to mean that the contractor is to be paid 90% of any invoice at the time of submission." (R. 525). Accordingly, we cannot conclude that the trial court's determination that Developer breached the contract by failing to pay Contractor's invoices in a timely manner is clearly erroneous. *See Burras v. Canal Const. and Design Co.*, 470 N.E.2d 1362, 1366–67 (Ind.Ct.App.1984) (holding that owner was in breach by refusing to make the payments required under the contract which in turn justified the contractor's suspension of its performance under the contract).

### III. Overstated Lien

#### A. Developer's Contention

Developer correctly points out that the amount Contractor originally claimed under its mechanic's lien was substantially overstated because it included some double billing and amounts which Developer had already paid. Developer argues that these overstatements have rendered Contractor's lien void. In support of his contention, Developer cites *Drake Lumber Co. v. Paget Mortg. Co.*, 203 Or. 66, 274 P.2d 804, 811 (1954), which reads as follows:

[w]here the claimant has intentionally or through culpable negligence overstated

the amount due him such overstatement will render the whole lien void, but a mere mistake in the statement will not necessarily render the whole lien void when it is evident that no fraud is intended, and where it has not misled the defendant owner to his prejudice in making his defense.

The *Drake Lumber* court went on to hold that the evidence failed to demonstrate that the materialman's overstatement of its claim was done either intentionally or through culpable negligence. *Id.*

### B. Analysis

▪▪▪ The same result obtains in the present case. The evidence supports Contractor's assertion that the overstatements alleged were the result of innocent and inadvertent clerical errors which were reported to Developer upon discovery. (R. 2096–97). Moreover, it is manifest from the voluminous record that the amounts claimed by Contractor were vigorously litigated and, therefore, Developer has not been prejudiced by the overstatements made in the original claim. From the trial court's findings of fact and the inferences reasonably drawn therefrom, we are confident that the trial court rejected Developer's claim that the overstatements originally made in Contractor's mechanic's liens were intentional or the result of culpable negligence. *See Mitchell v. Mitchell,* 695 N.E.2d 920, 923–24 (Ind.1998) (holding that the appellate tribunal may affirm a judgment on a legal theory supported by the findings where it is confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn therefrom). Therefore, we cannot conclude that the trial court's determination that Contractor's lien was not void as the result of the overstatements is clearly erroneous.

### IV. Measure of Contractor's Damages

#### A. Developer's Contentions

Developer contends that the record fails to support the amount of damages award-

ed to Contractor. Developer also asserts that Contractor is entitled to no damages due to the substantial damages it suffered as the result of Contractor's failure to complete the project on time.

### B. Damages—Standard of Review

As stated in *4–D Buildings, Inc. v. Palmore,* 688 N.E.2d 918, 921 (Ind.Ct.App. 1997):

An appeal of a damage award as excessive is governed by a strict standard of review. We will neither reweigh the evidence nor judge the credibility of witnesses, and will consider only the evidence favorable to the award. A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise. Thus, a damage award will be reversed only when it is not within the scope of the evidence before the finder of fact.

It is a fundamental rule of damages that a party injured by a breach of contract may recover the benefit of his bargain but is limited in his recovery to the loss actually suffered.... [T]he injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred. A damage award must be referenced to some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits or direct inference from known circumstances.

(citation omitted).

### C. Analysis

▪▪▪ As noted above, the evidence supports the trial court's determination that Developer first breached the contract by its failure to make the payments required under the contract and, accordingly, Contractor was justified in suspending its

performance due to Developer's breach. *See Burras,* 470 N.E.2d at 1366–67 (holding that where owner refused to make the payments required under the contract, the contractor was justified in suspending its performance). Additionally, the evidence supports the trial court's conclusion that Contractor had finished 70% of the work described under the contract. The trial court's calculation of the reasonable value of Contractor's services as 70% of the contract price, (R. 526), is a measure fairly designed to provide Contractor with the benefit of its bargain yet not place it in a better position than it would have enjoyed had the breach not occurred. Therefore, we cannot conclude that the amount of contract damages awarded to Contractor is clearly erroneous.

### V. Contractor's Reasonable Attorneys' Fees

#### A. Developer's Contentions

Developer contends that the record fails to support the Contractor's award of attorneys' fees because the evidence consisted of only the self-serving affidavit and exhibit submitted by Contractor's attorney. (Appellant's brief at 29). Additionally, Developer cites *Burras,* 470 N.E.2d at 1370, for the proposition that Contractor may recover only those fees related to the foreclosure of its mechanic's lien and, therefore, the trial court erred by awarding fees incurred in defending against Developer's counterclaims.

#### B. Invited Error—Acquiescence in Trial Procedure

 Developer lodged no objection to the trial procedure prescribed by the trial court whereby the issue of attorney fees would be submitted to the court by affidavit. Developer's failure to object to the procedure employed herein constitutes waiver. *See Hall v. State,* 634 N.E.2d 837, 841 (Ind.Ct.App.1994) (holding that a party may not claim error in trial procedure when he acquiesced in that procedure); *Stolberg v. Stolberg,* 538 N.E.2d 1, 3, 5 (Ind.Ct.App.1989) (holding that the party

invited any error by agreeing, without objection, and acquiescing in the procedure employed to reach an agreement during trial).

#### C. Standard of Review—Attorneys' Fees

Indiana Code § 32–8–3–14 reads in pertinent part as follows:

> In all suits brought for the enforcement of [a mechanic's lien], if the plaintiff or lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees, which shall be entered by the court trying the same, as a part of the judgment in said suit....

As stated in *Johnson v. Blankenship,* 679 N.E.2d 505, 509–10 (Ind.Ct.App.1997). *summarily aff'd,* 688 N.E.2d 1250:

> The determination of reasonable attorney fees in an action to enforce a mechanic's lien is generally a question of fact. It depends upon many different factors including 'the time and effort required, the value of the interest involved, the experience, reputation, and ability of the attorneys performing the services, and the results secured at trial.' Because of the fact-sensitive nature of the determination, the trial court is given a great deal of discretion in making the decision of what constitutes reasonable attorney fees. We will only reverse the trial court's decision concerning attorney fees if there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary conclusion.... The purpose of the award of attorney fees is not to compensate the attorney for all work performed. Instead, the award should reflect the amount the lienholder reasonably had to incur to foreclose the lien. It should be reasonable in relation to the amount of the judgment awarded to prevent property owners from being discouraged from challeng-

ing defective work by the lienholder for fear of excessive attorney fees.

(citation omitted).

### D. Analysis

Developer's reliance on *Burras*, 470 N.E.2d at 1370, is misplaced. The *Burras* decision stands for the proposition that the lienholder cannot recover attorney fees incurred in defending against counterclaims *on which the landowner prevailed* based on the rationale that "a losing party is never entitled to attorney fees." *Id.* In the present case, Developer did not prevail on its counterclaims. Contractor's defense against these claims was part and parcel of, and necessary to, the enforcement of its mechanic's lien. Therefore, we cannot conclude that the trial court erred by awarding the attorney fees Contractor incurred defending against Developer's counterclaims.

Moreover, the present litigation has been complex and protracted, requiring a trial spanning four and one-half days. As noted above, Contractor was required to defend against several counterclaims prosecuted by Developer. Considering the evidence as a whole, we conclude that the trial court appropriately balanced all of the considerations in determining what constituted a reasonable attorney fee. *See Johnson*, 679 N.E.2d at 510. Accordingly, we cannot conclude that the trial court's award of attorney fees is clearly erroneous.

### Conclusion

We reverse the judgment in favor of Engineer and remand with instructions that the trial court enter new findings and modify its judgment as outlined in Issue I. In all other respects, we affirm.

Affirmed in part, reversed in part, and remanded with instructions.

HOFFMAN, Sr.J., concurs.

GARRARD, J., concurs in part and dissents in part with separate opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur with the majority's affirmance of the judgment in favor of the contractor, but dissent to its reversal of the judgment in favor of the engineer.

The issue concerning the engineer is whether it filed its notice of mechanic's lien within sixty days of the last date it performed work on the project. I agree with the law cited by the majority to the effect that this time period cannot be extended by virtue of gratuitous or incidental work performed after the work called for has been completed or abandoned.

I find, however, that this was not the case here. The trial court specifically found that the developer had requested the engineer to perform additional services beyond those called for in the $15,000 written contract, that such services had been performed by the engineer, and that it was the developer, through its attorney, that requested the engineer to again perform services to determine the condition of the project and what needed to be done to complete it. In response to that request the engineer spent its time and effort reviewing the plans and specifications and communicating with the Utility Center and Surveyor's office to determine what utilities had been completed and inspected. Thus, at the developer's special instance and request, the engineer recommenced work on the project until it was again told that the developer would not pay for its services. The evidence supports these findings. Accordingly, I would find that the lien notice filed within sixty days of the furnishing of these further requested services was timely. I would therefore affirm the judgment in its entirety.