(85 P.3d 205)
No. 89,286

CREME DE LA CREME (KANSAS), INC., *Plaintiff/Appellee,* v. R&R INTERNATIONAL, INC., *et al., Defendants,* and ALPINE ELECTRICAL CONSTRUCTION, INC., *Defendant/Appellant,* v. HILLCREST BANK, *Third-Party Defendant.*

Opinion filed February 27, 2004.

*Lee B. Brumitt* and *Patrick J. Kaine*, of Dysart, Taylor, Lay, Cotter & Mc-Monigle, P.C., of Kansas City, Missouri, for appellant.

*John M. Duggan* and *Deron A. Anliker*, of Duggan, Shadwick, Doerr & Kurlbaum, P.C., of Overland Park, for appellee.

Before GREEN, P.J., MARQUARDT and MALONE, JJ.

MARQUARDT J.: Alpine Electrical Construction, Inc. (Alpine) appeals the trial court's order that its mechanic's lien filed against Creme de la Creme (Kansas), Inc. (CDLC) was not timely. We affirm.

In January 1999, CDLC contracted with R&R International, Inc. (R&R) for the construction of a new daycare facility. Later that month, R&R contracted with Alpine for a fee of $148,638 for the electrical work at the facility.

On September 1, 1999, Alpine received a letter from R&R asking for final billings for all contract work and change orders. Joel Ford, Alpine's project manager at the site, responded by collecting paperwork and making certain that everything was in order. On September 20, 1999, Alpine submitted its final bill to R&R. The bill stated that Alpine's work was 100 percent complete.

Timecards for September 23 and 24, 1999, show that Ernie Cota and Mike Black, employees of Alpine, spent 6 and 6.5 hours respectively at the CDLC job site. On these 2 days, the men ran power to the monument sign, placed wire cages over emergency lights in the gymnasium, and installed flagpole light sensors, time clocks, and trippers. Alpine filed a mechanic's lien against CDLC

on December 23, 1999, for the unpaid balance of $57,274.51, plus accrued interest.

In March 2000, CDLC filed this lawsuit against R&R and most of the subcontractors who worked on the project because R&R failed to pay the subcontractors. As a result, numerous mechanics' liens were filed against CDLC. Alpine answered and included a counterclaim against CDLC and a cross-claim against R&R. Alpine was later awarded judgment against R&R for $69,954.17. Collection of that judgment is not part of this lawsuit.

In November 2000, CDLC filed a motion for summary judgment claiming that Alpine's mechanic's lien was not timely filed. Alpine responded by filing a motion for summary judgment. The trial court considered the matter of summary judgment and ruled that it could not conclude as a matter of law Alpine's mechanic's lien was not timely filed and denied CDLC's motion for summary judgment. The trial court considered the matter of Alpine's mechanic's lien at an evidentiary hearing in January 2002. After Alpine presented its evidence, CDLC moved for judgment as a matter of law. CDLC's motion was granted. The trial court found that most of the work performed by Alpine on September 23 and 24, 1999, was done as a courtesy and, thus, could not be used to extend the time in which to file a mechanic's lien. The trial court ruled that the testimony concerning the installation of the photocells was inconsistent and that work could not be used to extend the time in which to file a mechanic's lien. Alpine timely appeals.

Alpine claims that its time for filing a mechanic's lien was extended because of its work consisting of: (1) tying in and internally wiring the monument sign; (2) installing time clocks and trippers; (3) installing wire guards for emergency lights located in the gymnasium; and (4) installing photocell lighting on the flagpoles.

On appeal, Alpine argues that the trial court erred by finding that the work performed was done as a courtesy.

Our standard of review requires us to determine whether the trial court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Manhattan Mall Co. v. Shult*, 254 Kan. 253, 254, 864 P.2d 1136 (1993). Substantial evidence is such legal

and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001).

Under K.S.A. 2003 Supp. 60-1103(a)(1), a subcontractor's mechanic's lien must be filed within 3 months after the date supplies, material, or equipment was last furnished or labor was performed by the claimant. There is no dispute that Alpine was a subcontractor of R&R and that Alpine's mechanic's lien was filed on December 23, 1999.

The requirements for a mechanic's lien must be strictly met. It is only after the lien has attached that the mechanic's lien provisions are liberally construed. *J. Walters Constr. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 691, 817 P.2d 201 (1991). Mechanics' liens are statutory and can only be acquired in the manner prescribed in the statute. Those claiming a mechanic's lien have the burden of bringing themselves clearly within the provisions of the statute. *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, 838, 908 P.2d 1315 (1995), *rev. denied* 259 Kan. 928 (1996).

The test for determining timeliness of a mechanic's lien is whether the final work was necessary under the terms of the original contract to complete the job and to comply with the requirements of the contract. *Stickney v. Murdock Steel & Engineering, Inc.*, 212 Kan. 653, 656, 512 P.2d 339 (1973).

A determination of whether labor and material were furnished within the statutory period, but after the contract had been substantially completed, constitutes a question of fact. Mere delay in completing a contract does not invalidate a lien where there is no bad faith or unnecessary delay. Where the contractor has not completed the work under the contract, the building cannot be considered as having been completed as to the contractor or any subcontractor. 53 Am. Jur. 2d, Mechanics' Liens § 201, p. 241.

When a building is substantially complete and is accepted by the owner, the contractor cannot thereafter perform some omitted part of the contract and thereby extend the period for filing the lien. For the purpose of complying with a statutory deadline for filing a

lien, work includes remedial work if done pursuant to the original contract. 53 Am. Jur. 2d, Mechanics' Liens § 201, p. 242.

### Tying in power to the monument sign

We hasten to note that our inquiry on this matter is made more difficult by the fact that even though the agreement between R&R and Alpine included in the record on appeal was a standard printed agreement between contractor and subcontractor, the specific items of work to be performed under the contract were apparently set out on drawings that are not included in the record on appeal. An appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. *Unrau,* 271 Kan. at 777.

The trial court found that no change order was issued for tying in power to the monument sign. However, Alpine contends that the tying in work was part of the original contract. Furthermore, Alpine maintains that the tying in work was distinct from the process of internally wiring the monument sign. Alpine contends that since the tying in work was not completed until September 23 and 24, 1999, there is no question that this work extends the time in which to file a mechanic's lien.

Dan Smith, president of Alpine, testified that the process of hooking up power to the monument sign was within the scope of Alpine's original contract with R&R. Ford testified that the original contract stated that Alpine would provide power to the sign through a conduit from the building. However, a problem arose when Alpine discovered that the sign had not been internally wired.

Cota testified that on September 2, 1999, he located the underground conduit that ran to the location for the monument sign. The sign was not yet in place, so it could not be tied in to the building's electrical system. Cota testified that running the conduit and wire were part of Alpine's normal scope of work. Cota confirmed that he actually ran the wire and hooked up the sign on September 23 and 24, 1999. However, during his deposition in October 2000, Cota testified that the process of tying in the monument sign was not part of the original contract.

Larry Moore, CDLC's director of construction, testified that the process of installing the sign and hooking up the power to the sign fell under the auspices of the company hired to produce the sign. Moore testified that any work Alpine did regarding the monument sign was not done at the request of CDLC or R&R.

With conflicting testimony on whether the tying in work was included within the scope of the original contract, the trial court found that the work was performed as a courtesy, which supported the position that the tying in work was not part of Alpine's duties. It is not the function of the appellate court to weigh the evidence or pass on the credibility of witnesses. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 478, 15 P.3d 338 (2000).

In the absence of a contractual mandate or work order to complete the subcontractor's work, we agree with the trial court that the tying in work was gratuitous and did not extend Alpine's time for filing a mechanic's lien.

### Internal wiring work on the sign, time clocks, trippers, and wire guards

Alpine concedes that the internal wiring of the sign and the installation of the time clocks, trippers, and wire guards were not listed in its original contract with R&R. However, Alpine maintains that Moore orally requested this additional work. Alpine contends that the issue is whether work that is specifically requested by the owner can extend the time for filing a mechanic's lien, even though the request is not listed on a change order.

Ford testified that the internal wiring of the sign was not included in any change order. Black testified that Moore ordered Alpine to internally wire the sign. However, Smith testified that he did not know if Moore requested that the work be done.

In his deposition, Moore testified that he did not recall any conversation regarding the internal wiring of the sign. Moore's knowledge was limited to the fact that Alpine was "involved in the monument sign."

Smith testified that it was "very possible" that the internal wiring work was done as a courtesy to CDLC. Smith explained that Alpine's policy was to avoid holding up a large project over a small

change order. Therefore, Alpine would occasionally perform work at the end of a project as "a courtesy" so that the project could be completed. Ford echoed this testimony, explaining that occasional jobs were absorbed into overhead so that the payment could be expedited.

It is clear that the internal wiring work on the monument was neither part of the original contract, nor added on a change order. At the time the work was completed, Alpine had already notified CDLC that the project was 100 percent complete. Therefore, we agree with the trial court's conclusion that the internal wiring work was gratuitous.

Smith testified that Cota was directed by Moore to put the wire guards over the light fixtures in the gymnasium. However, Smith again stated that he "wouldn't have any way of knowing" who made any request that work be completed. Smith clarified that he had no personal knowledge of any requests regarding the gymnasium light guards.

Cota testified that Moore specifically requested the wire guards be placed over the lights. However, he believed that a change order was entered to reflect that request. No such change order exists in the record on appeal. Cota also testified that Moore requested additional time clocks be added since the original plans did not provide for enough time clocks.

The undisputed testimony in the record on appeal shows that Moore asked Alpine to install the wire guards and the additional time clocks.

We have been unable to discover any Kansas case law which is directly on point. The cases cited by Alpine all refer to situations where the owner makes a request regarding work performed under the contract. That is not the situation here, since it is undisputed that the addition of wire light guards and extra time clocks were not part of the original contract.

Even though there is no Kansas case directly on this point, the statute is clear. Under K.S.A. 60-1101, the work that is performed under the terms of a contract may be subject to a mechanic's lien. The work performed in the instant case was not part of the original

contract, nor was it reflected on a change order. Thus, it cannot be the subject of a mechanic's lien.

In *Abbey Villas Develop. v. Site Contractors*, 716 N.E.2d 91 (Ind. App. 1999), the Indiana Court of Appeals determined that the time for filing a mechanic's lien cannot be extended through the performance of an act incidental to the contract. 716 N.E.2d at 98. The court concluded that as a matter of law, the mechanic's lien could not be based on the additional services performed pursuant to the developer's request. 716 N.E.2d at 99. The court believed that such work was merely incidental to the original contract, meaning it could not extend the period in which to file a mechanic's lien. 716 N.E.2d at 98-99.

We believe that the reasoning of the Indiana court is persuasive. The Indiana court emphasized that its decision was in part based on the fact that the engineer had certified the work was completed prior to the performance of the additional work. 716 N.E.2d at 99. In the instant case, Alpine certified on September 20, 1999, that the work was 100 percent complete.

We hold that any work done in response to an informal request from R&R cannot be used to extend Alpine's time for filing a mechanic's lien.

### *Photocells for the flagpole*

On September 7, 1999, Alpine submitted change order No. 33 to R&R for the installation of Village Scape lighting and photocells for the flagpole. This change order was preceded by a small job work order dated August 21, 1999. The small job work order specifically references Larry Moore's request to install the photocells for the flagpole. This small job work order shows that Cota certified the photocell work as complete on August 27, 1999. Smith testified that typically, the official change order was prepared after the work was completed.

Cota's logbook for September 2, 1999, shows that Cota and Black worked on the photocells that day. However, Cota testified that he and Black installed the photocells on September 23 and 24, 1999. Cota explained that on September 2, 1999, he discovered he did not have the correct photocells for the preexisting lighting.

Cota had to purchase new lights and photocells. Cota testified that he ordered the new photocells on September 15, 1999. An invoice dated September 15, 1999, showing a ship date of September 15, 1999, reveals an order for "3000W 277V ½ HUB/SLIDE FACE."

Prior to the hearing in this matter, Cota signed an affidavit swearing that he did no work on the CDLC project between September 2, 1999, and September 23, 1999. However, upon questioning, Cota admitted that it was possible he actually did work on the CDLC project during that period. Cota also admitted that it was possible he might have received materials without having a corresponding invoice. In his deposition, Cota expressed uncertainty regarding the date of the photocell installation. Specifically, Cota could not remember if he ordered the materials on August 27, 1999, or if the project was completed on August 27, 1999. However, at trial, Cota was "absolutely certain" that he installed the photocells on September 23 and 24, 1999.

Cota's logbook does not reflect any work being performed on either September 23 or 24, 1999. Cota's timecard for the days in question reveals that he spent 12.5 hours on the CDLC project. However, the timecards do not contain any details about what projects Cota worked on during his time at the CDLC site.

On appeal, Alpine argues that the trial court's finding that Cota's trial testimony was inconsistent is not supported by substantial competent evidence. Alpine maintains that Cota's testimony is supported by his timecard.

At the conclusion of a hearing to settle the journal entry, the trial court expressly refused to find that Cota's testimony was inconsistent. However, we believe that the record on appeal reveals a different finding.

The trial court heard testimony supporting two different positions: that Cota installed the photocells on September 23 and 24, 1999, and that Cota installed the photocells at some date prior to the 23rd and 24th. The trial court overtly noted in its journal entry that Cota's trial testimony was inconsistent, and it refused to allow the work on the photocells to extend Alpine's time in which to file a mechanic's lien. We do not believe that this finding can be rationalized in any way other than a finding that Cota's testimony

was not credible. Even after stating that Cota's testimony was inconsistent, the trial court disregarded it and ruled in CDLC's favor.

It is well known that this court does not pass upon the credibility of witness testimony, nor does it weigh conflicting evidence. See *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). We simply cannot review the trial court's findings here, regardless of how the issue is couched on appeal. Thus, we find no error in the trial court's conclusion that the installation of the photocells may not be used to extend Alpine's time for filing its mechanic's lien.

We have thoroughly reviewed all of Alpine's arguments, and we conclude that the trial court did not err by ruling that Alpine's mechanic's lien was not timely filed.

Affirmed.