Kirk REUILLE, Appellant–Plaintiff,

v.

E.E. BRANDENBERGER
CONSTRUCTION, INC.,
Appellee–Defendant.

No. 02A04–0704–CV–186.

Court of Appeals of Indiana.

Sept. 6, 2007.

Craig R. Patterson, Andrea R. Dick, Beckman Lawson, Fort Wayne, IN, Attorneys for Appellant.

A. Dale Bloom, Jeremy J. Grogg, Burt Blee Dixon Sutton & Bloom, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Kirk Reuille appeals the trial court's judgment in favor of E.E. Brandenberger Construction, Inc. ("Brandenberger"). Reuille presents two issues on appeal, which we restate as:

I. Whether the trial court erred in interpreting the phrase "prevailing party" in the contract between Brandenberger and Reuille; and

II. Whether the trial court erred when it characterized Reuille's motion for attorney fees as one for summary judgment.

We affirm.

The relevant facts follow. In February 1997, Reuille and Brandenberger entered into an agreement for the construction of a new home in Fort Wayne, Indiana. In the construction contract, a section entitled "Costs and Attorney fees" provided: "In any action at law or in equity, including enforcement of an award from Dispute Resolution, or in any Dispute Resolution involving a claim of five thousand dollars or more, the prevailing party shall be entitled to reasonable costs and expenses, including attorney fees." Appellant's Appendix at 41. Shortly after construction, Reuille found that during and after periods of rain, water would appear on the interior windows of the house. Brandenberger recaulked the windows and attempted repairs up until the spring of 2002.

After the spring of 2002, there was continued water leakage, and Reuille filed a complaint against Brandenberger on October 8, 2002, asserting claims for breach of warranty, breach of contract, and negligence. On November 26, 2002, Brandenberger filed its answer and asserted that "any warranty provided with regard to the 'Peach Tree' windows was provided by 'Peach Tree' and not by Brandenberger." *Id.* at 25. In July 2003, Reuille then added Peachtree Doors and Windows ("Peachtree") as an additional defendant. On December 28, 2005, all three parties participated in a mediation which resulted in a partial settlement on all but one issue. Brandenberger paid Reuille $32,000, and Peachtree gave Reuille fourteen windows. Reuille then contracted with another company who stopped the water leakage and remediated the mold that had resulted from the leaking water. The parties specifically agreed to the following terms:

[Reuille] shall release all claims that he has or may have asserted against E.E. Brandenberger Construction, Inc., in this law suit [sic] except for the issue of whether or not the Defendant E.E. Brandenberger Construction, Inc. is liable for the Plaintiff's reasonable costs and expenses, including attorney fees. This issue shall be submitted to Judge Boyer subject to all legal defenses and the parties waive the right to a jury trial on this issue. The parties did not reach an agreement as to Reuille's claim for attorney fees.

*Id.* at 116. In a partial release of claims, Reuille also agreed that he "releases and forever discharges Brandenberger Construction, Inc." from:

Any and all claims, and any and all manner of actions, cause, and causes of actions, suits, liens, debts, sums of money, contracts, accounts, damages, judgments, executions, claims and demands,

whatsoever, whether in law or in equity, which Reuille has or may have asserted in the action filed in Allen County Superior Court as Cause No. 02D01–0210–PL–474 pertaining to damage which may have occurred due to the manufacturing or installation of windows on the Reuille's residence, subsequent water incursion thereon, and/or the potential presence of mold within the Reuille residence, as well as any remediation of the same, but excluding [ ] any claims for reasonable costs and expenses, including attorney fees associated with the prosecution of the foregoing released claims.

*Id.* at 119.

On December 14, 2006, the trial court held a status conference and ordered both parties to submit briefs on all legal issues and set a hearing for February 16, 2007. On January 31, 2007, Reuille and Brandenberger filed their motions on the issues of law. Their memorandums addressed the remaining issue not settled in mediation, whether Reuille was entitled to costs and expenses, including attorney fees. Reuille's memorandum argued that he was entitled to attorney fees because he was a prevailing party as a result of the settlement he received. Brandenberger argued that Reuille was not a prevailing party because his settlement lacked a judicial resolution. On February 16, 2007, the trial court held a hearing and took the matter under advisement. On February 27, 2007, the trial court entered its judgment. The trial court found that Reuille was not a prevailing party and, therefore, was not entitled to attorney fees, and entered judgment accordingly. The trial court then determined the trial set for May 15, 2007, was no longer necessary and vacated it. Also on February 27, 2007, Reuille filed a motion for leave to file written briefs with regard to mutual mistake. On March 6, 2007, the trial court determined that be-

cause the matter had been disposed of in its entirety, Reuille's motion was moot.

### I.

The first issue is whether the trial court erred when it interpreted the construction contract and determined that Reuille was not a "prevailing party." The trial court effectively addressed Reuille's motion as a motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

 Reuille specifically argues that the trial court did not properly interpret the term "prevailing party," as found in the parties' contract. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.,* 716 N.E.2d 91, 100 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* "The parties' rights under a contract are to be determined by the law as declared by the courts at the time the contract is entered into." *Washington Theatre Co. v. Marion Theatre Corp.,* 119 Ind.App. 114, 81 N.E.2d 688, 693 (Ind.Ct. App.1948).

 The contract is to be read as a whole when trying to ascertain the intent of the parties. *Abbey Villas,* 716 N.E.2d at 100. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes the provisions to be conflicting. *Id.* If the language of the instrument is unambiguous, we will determine the intent of the parties from the four corners of that instrument. *Id.* at 99–100.

 We presume that the parties know the technical meaning of the language they use in a formal instrument and have adopted that meaning. *George S. May Intern. Co. v. King,* 629 N.E.2d 257, 262 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Thus, in construing a formal contract, we must give the words contained therein their ordinary legal significance unless it is clear from the contract as a whole that it was highly improbable that the parties attached to the words their legal significance. *Id.*

 Reuille argues that he is entitled to attorney fees by the construction agreement, which provided:

> In any action at law or in equity, including enforcement of an award from Dispute Resolution, or in any Dispute Resolution involving a claim of $5,000 or more, the prevailing party shall be entitled to reasonable costs and expenses, including attorney fees.

Appellant's Appendix at 109.

 Reuille argues that he is a "prevailing party" under the "catalyst theory," because it was the law in Indiana when the contract was entered into in 1997. In general, the "catalyst theory" provides that "a plaintiff is a 'prevailing

party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 601, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Brandenberger argues that with just a private settlement and nothing more, Reuille is not a prevailing party as defined under Indiana law in 1997 or current precedent. We agree with Brandenberger and conclude that Indiana courts have not applied the catalyst theory and that Reuille is not a prevailing party.[1]

To properly interpret the term "prevailing party," we will begin by reviewing Indiana decisions from the time that the parties entered into the contract.[2] In 1993, the Indiana Supreme Court decided *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Center, Inc.*, 622 N.E.2d 935, 946 (Ind.1993), cert. *denied*, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). In *Tioga*, Medicaid providers that filed suit against the State were awarded attorney fees pursuant to 42 U.S.C. § 1988, which allows a "prevailing party" to be awarded attorney fees. 622 N.E.2d at 937. On appeal, the State argued that the providers were not prevailing parties. The providers argued they prevailed on their 42 U.S.C. § 1983 claims because the State voluntarily promulgated new rules in

1991. *Id.* at 946. The Indiana Supreme Court held:

Generally, in order to obtain an award of attorney fees, plaintiffs must prevail on the merits of their claims. *See Kentucky v. Graham*, 473 U.S. 159, 163, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114, 120 (1985). However, plaintiffs may be considered prevailing parties without obtaining a favorable final judgment following a full trial on the merits. Plaintiffs may prevail, for example, by consent decree or settlement which grants them the relief sought in bringing suit. *See, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

The United States Supreme Court recently has addressed the issue of what constitutes a "prevailing party" for purposes of § 1988. In *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992), Justice Thomas, writing for the majority, stated:

[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.

Whatever relief the plaintiff secures must directly benefit him at the time

---

**1.** Reuille cites several cases to show Indiana's use of the catalyst theory. However, only *Dickinson v. Indiana State Election Bd.*, 817 F.Supp. 737, 746 (S.D.Ind.1992), actually uses language that signifies some use of the catalyst theory. Because *Dickinson* is a federal district court case, we do not have to apply its holding and, moreover, do not find its application proper here. *See Indiana Dep't of Pub. Welfare v. Payne*, 622 N.E.2d 461, 468 (Ind.1993) (holding that lower federal court decisions may be persuasive but have non-binding authority on state courts), *reh'g denied*.

**2.** Reuille first references Black's Law Dictionary (8th ed.2004) to provide a plain and ordinary meaning to "prevail," which is defined as "to obtain the relief sought in an action; to win a lawsuit." Appellant's Brief at 12. However, the term which we wish to interpret, "prevailing party," is defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Appellee's Brief at 19 (citing BLACK'S LAW DICTIONARY 1145 (7th ed.1999)).

of the judgment or settlement. Otherwise the judgment or settlement cannot be said to affec(t) the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. *Id.* at 110, 113 S.Ct. at 572 (citations omitted).

*Id.* at 946–947. The court concluded that "[p]roviders [had] not prevailed by obtaining an 'enforceable judgment.' Further, there being no consent decree or settlement *entered* in this case, [p]roviders have not established entitlement to 'prevailing party' status...." *Id.* (emphasis added). The court implicitly rejected the catalyst theory because it concluded that the providers were not prevailing parties despite the voluntary change in the State's conduct.

Similarly, in *State Wide Aluminum, Inc. v. Postle Distributors, Inc.*, 626 N.E.2d 511, 516–517 (Ind.Ct.App.1993), *reh'g denied, trans. denied*, we concluded that State Wide was not a prevailing party under Ind.Code § 34–1–32–1(b) entitled to attorney fees because State Wide did not receive a judgment. In *Heritage House of Salem, Inc. v. Bailey*, 652 N.E.2d 69, 79 (Ind.Ct.App.1995), *reh'g denied, trans. denied*, the plaintiff argued it was the prevailing party because it received a temporary restraining order that later became a preliminary injunction. However, summary judgment was subsequently entered in favor of the defendant. 652 N.E.2d at 79–80. Because plaintiff lost its case on the merits and did not obtain "at least some relief on the merits of his claim," it was not a prevailing party. *Id.* (citing *Tioga*, 622 N.E.2d at 947). *See also Coplen v. Omni Restaurants, Inc.*, 636 N.E.2d 1285, 1288 (Ind.Ct.App.1994) (de-

fining "prevailing party" as "a party who successfully prosecutes his claim or asserts his defense"); *State ex rel. Prosser v. Indiana Waste Systems, Inc.*, 603 N.E.2d 181, 189 (Ind.Ct.App.1992) (holding that Indiana Waste was not a prevailing party because "a favorable ruling on a motion is not a judgment allowing the recovery of costs").

We conclude that, at the time Reuille and Brandenberger entered into their contract, Indiana had not recognized the catalyst theory. The settlement agreement did not provide a material alteration of the legal relationship of the parties, and Reuille did not have a consent decree or enforceable judgment. Consequently, under Indiana law in effect at the time the parties entered into the construction contract, Reuille was not a prevailing party despite the parties' settlement agreement in his favor.

This conclusion is bolstered by our opinion in *D.S.I. v. Natare Corporation*, 742 N.E.2d 15, 24 (Ind.Ct.App.2000), *reh'g denied, trans. denied*, which we decided shortly after the parties entered into their contract. There, the parties entered into a settlement agreement, and the trial court entered a permanent injunction in favor of Natare pursuant to the settlement agreement. 742 N.E.2d at 21. The trial court also granted Natare's request for attorney fees under Ind.Code § 34–52–1–1. *Id.* On appeal, D.S.I. argued that Natare was not entitled to attorney fees because Natare was not a prevailing party. *Id.* at 22.

Interpreting *Tioga Pines, Dickinson v. Indiana State Election Board*, 817 F.Supp. 737 (S.D.Ind.1992), *State Wide Aluminum*, and *State ex rel. Prosser*, we concluded:

Consistent with *Tioga Pines Living Center, Inc.* and *Dickinson*, a party is a "prevailing party" within the meaning of IC § 34–52–1–1, if that party successfully prosecutes its claim or asserts its

defense. According to *State Wide Aluminum* and *Prosser*, the requisite successful litigation must culminate in a judgment. According to *Tioga Pines Living Center, Inc.* and *Dickinson*, the judgment alluded to in *State Wide Aluminum* and *Prosser* may take the form of an agreed entry or stipulation, so long as it resolved the dispute generally in the favor of the one requesting attorney fees and altered the litigants' legal relationship in a way favorable to the requesting party. In conducting the latter inquiry, we are to focus upon the requisite judgment in the specific context of the substance, issues, and nature of that particular litigation.

*Id.* at 24. We concluded that, although the parties entered into a settlement agreement, the permanent injunction was a judicial order that altered the litigants' legal relationship in a way favorable to Natare. *Id.* at 25. Consequently, we held that "we [were] satisfied that, under synthesized analyses of *Tioga Pines Living Center, Inc., Dickinson,* State *Wide Aluminum,* and *Prosser,* Natare was a 'prevailing party' . . ., and therefore satisfied that criterion of eligibility for attorney fees." *Id.*

■ Shortly thereafter, the United States Supreme Court decided *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In *Buckhannon,* the court held that, without a judgment on the merits or a court-ordered consent decree, achieving the desired result through a voluntary change in defendant's conduct did not make a plaintiff a prevailing party. 532 U.S. at 600, 121 S.Ct. at 1838. Decisions such as enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees to a prevailing party. *Id.* at 604, 121 S.Ct. at 1840.[3]

Subsequent Indiana cases have incorporated the definition of "prevailing party" as found in *Buckhannon.* In *Daffron v. Snyder,* 854 N.E.2d 52, 53 (Ind.Ct.App. 2006), *aff'd* on *reh'g,* Daffron received a settlement, and the court entered a consent judgment approving the agreement. The court held that, because of the change in the legal relationship pursuant to the consent judgment, Daffron was a "prevailing party." 854 N.E.2d at 56–57.

Thus, even under current precedent, Reuille does not qualify as a prevailing party because, although the parties entered into a settlement agreement, Reuille had neither a consent decree nor an enforceable judgment entered along with his settlement agreement. Unlike the court in *Daffron,* where the court entered a consent judgment after the settlement, Reuille had nothing but a private settlement agreement.[4] As a result, the trial court was

---

3. Reuille also argues that use of *Buckhannon* and its progeny are misplaced because they interpret statutes and not contract provisions, which are applicable in this case. However, Reuille fails to cite any authority providing that the definition of "prevailing party" is different when interpreting a private contract as opposed to a statute. We find that although the content in which the term may appear is different, the definition and application of "prevailing party" is the same.

4. Reuille cites to *Stenger v. LLC Corp.,* 819 N.E.2d 480, 484 (Ind.Ct.App.2004), *trans. denied,* for the proposition that attorney fees may be pursued after a settlement agreement is reached where the settlement agreement specifically leaves the issue of attorney fees open. However, we find his interpretation of its holding incorrect and inapplicable to the current issue. The *Stenger* court stated:

 [w]e do not hold that as a matter of law consumers who accept offers of settlement are not "prevailing parties" as that phrase

correct in its judgment that Reuille was not a prevailing party. Cf. *D.S.I.*, 742 N.E.2d at 25 (holding that settlement agreement, along with an injunction, was sufficient judicial intervention to entitle plaintiff to prevailing party status).

## II.

■ The next issue is whether the trial court erred by treating his motion for attorney fees as one for summary judgment. Reuille argues that the trial court's procedures resulted in a *sua sponte* dismissal of his lawsuit. Reuille also argues that he was precluded from raising the defense of mutual mistake.

Although the trial court did not explicitly state that the hearing on February 16, 2007, was a hearing for summary judgment, the actions of the parties and the trial court reveal that it was. In the order entered on February 27, 2007, the trial court stated that a "hearing was conducted on the two parties' cross dispositive motions." Appellant's Appendix at 120. Also, the order stated that "the parties agree that the facts of this matter are undisputed." *Id.* The parties submitted memoranda on the one surviving issue before the court, attorney fees. The trial court then found that Reuille was not a prevailing party and was not entitled to attorney fees. The court then entered its judgment; it did not dismiss the case. With no facts in dispute and both parties' dispositive motions, the hearing was, in effect, one for summary judgment. We see nothing in the record that would have prevented Reuille from presenting his de-

fense of mutual mistake as part of his motion.

We conclude that Reuille was given a reasonable opportunity to present these claims and arguments and the trial court did not err by treating the motion as a motion for summary judgment. *See, e.g., Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1233 (Ind. 1986) (holding that although the court referred to the hearing as a motion to dismiss, it was apparent that the court and the parties treated the hearing as the functional equivalent of a hearing on motions for summary judgment by offering the parties an opportunity to present evidence pertinent to summary judgment motions).

For the foregoing reasons, the trial court did not err when it entered judgment in favor of Brandenberger on Reuille's request for attorney fees.

Affirmed.

RILEY, J. and FRIEDLANDER, J. concur.

---

is used in the Warranty Act by virtue of the operation of the trial rules. Rather, we hold only that when such offers, acceptances, and resulting judgments are completely silent on the issue of attorney's fees and appear to otherwise settle all claims between the parties, the judgment cannot

be interpreted to leave the issue of attorney's fees open.
*Stenger*, 819 N.E.2d at 484. *Stenger* held only that a settlement that is silent on the issue of attorney fees disposes of a claim for attorney fees. *Stenger* did not address the prevailing party issue presented here.