**CRIDER & CRIDER, INC.,**
Appellant–Defendant,

v.

**Royal DOWNEN and Anthony Ross "Tony" Downen, Appellees–Plaintiffs.**

No. 42A05–0701–CV–42.

Court of Appeals of Indiana.

Sept. 28, 2007.

Thomas A. Pastore, Pastore & Gooden, P.A., Indianapolis, IN, Attorney for Appellant.

Gregory W. Sturm, Jason C. Field, Sturm, Smith & Parmenter, Vincennes, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Crider & Crider, Inc. ("Crider") appeals the denial of its motion to correct error, which challenged the $37,267.52 award of damages to Appellees–Plaintiffs Royal Downen and Anthony Downen (collectively, "the Downens") after Crider admitted it breached its contract for the rental of the Downens' farm prop-

erty to dispose of muck generated in the process of highway construction. We revise the award of damages to $35,760.00.

**Issues**

Crider presents three issues for review:

I. Whether the trial court erroneously awarded personal property damages using a cost-of-repair method although the farm equipment at issue was traded rather than repaired;

II. Whether the trial court erroneously awarded the Downens $5,200.00 for the cost of terracing and tiling their farm property to correct erosion; and

III. Whether the trial court erroneously awarded $18,430.00 as damages for the diminution in value of eighteen acres owned by the Downens.

**Facts and Procedural History**

During the spring of 1997, Crider was awarded a contract with the State of Indiana Department of Transportation to construct improvements to U.S. Highway 50 east of Vincennes, Indiana. The construction project involved re-routing a portion of the highway. The new route ran through the Downens' farm and split their property into two sections. The south section consists of approximately 18.43 acres. Crider contracted with the Downens to utilize four acres of the southern tract to dispose of excess soil or muck accumulated during the construction project in exchange for the sum of $8,000.00. The agreement allowed for the area to be increased as necessary in exchange for additional compensation. Crider agreed to redistribute topsoil after all of the excess earth material had been placed. Further, the agreement contemplated that Crider "may, at the owners direction, need to enter the surrounding area in order to make the ground look better." (App.21.)

The road construction project was completed in 1999. By that time, Crider had used six acres of the Downens' farm for soil disposal and had paid the Downens the sum of $12,000.00. Crider redistributed soil and the Downens commenced farming the southern tract again.

During the farming process, the Downens' equipment impacted with buried debris. Also, after significant rainfalls, debris would wash to the surface of the land. The formerly "gently rolling" land with "valleys and peaks" was now more level with a slope toward a drainage ditch. (Tr. 33.) The water flowed so that it cut ditches two feet deep and rendered the field unsuitable for farming.

On June 11, 2002, the Downens filed their "Complaint for Damages Due to Breach of Contract" in the Knox County Circuit Court. (App.18.) Therein, the Downens alleged that Crider "caused to be deposited upon the Plaintiff's real estate non-earthen materials consisting of construction debris, chunks of concrete, 'rip-rap,' stumps, tires, tile, re-bar and other items to the detriment of the Plaintiffs." (App.18.) The Downens claimed to have suffered a diminution in real estate value and damages to their farm implements, and further claimed that they incurred expenses to install terraces, drainage tiles and risers in an effort to maintain their farming operation.

During his deposition, Crider's job site superintendent Brad Bredeweg recalled an incident that had occurred in either 1997 or 1998. A foreman for one of Crider's subcontractors had directed the disposal of six tri-axle truckloads of concrete onto the Downens' property. The truck had a twenty-ton capacity; accordingly, as much as 120 tons of debris was deposited onto the Downens' land. The majority of that debris was buried across the Downens'

land during the process of redistribution of soil.

Crider admitted its liability for the conduct alleged by the Downens' complaint. A bench trial on damages commenced on June 14, 2006. On September 12, 2006, the trial court awarded the Downens damages as follows:

| | |
|---|---:|
| Damage to Disk | 3,987.52 |
| Damage to Econo Till Ripper | 5,520.00 |
| Labor to Clean up Debris | 4,000.00 |
| Cost to Remove Concrete Slab | 130.00 |
| Devaluation of Real Estate | 18,430.00 |
| Correction of Erosion | 5,200.00 |
| Total | $37,267.52 |

(App.10–11.) On October 10, 2006, Crider filed a motion to correct error, challenging the amount of the personal property damages as well as the trial court's decision to award damages for diminution in land value and erosion correction. On November 20, 2006, the trial court conducted a hearing on the motion to correct error. On December 20, 2006, the trial court denied the motion to correct error. This appeal ensued.

## Discussion and Decision

### Standard of Review

■ Our review of an award of damages is limited. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 101 (Ind.Ct.App.1999), *trans. denied.* A judgment is not excessive unless the amount cannot be explained upon a basis other than prejudice, passion, partiality, corruption, or another improper element. *Id.* We do not reweigh the evidence or judge the credibility of witnesses, and we will consider only the evidence favorable to the award. *Id.*

■ A damage award must be supported by probative evidence and cannot be based upon mere speculation, conjecture, or surmise. *Id.* A party injured by a breach of contract is limited in his or her recovery to the loss actually suffered, and

he or she may not be placed in a better position than the party would have enjoyed had the breach not occurred. *Id.* Thus, a damage award must be referenced to some fairly defined standard, such as the cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances. *Id.* That said, we reverse an award of damages only when it is not within the scope of the evidence before the finder of fact. *See id.*

### I. Personal Property Damages

■ The Downens' disk and ripper were damaged upon impact with concrete or other debris, and the trial court awarded damages based upon the estimated cost of repair, $3,987.52 and $5,520.00, respectively. However, the Downens did not repair the farm equipment, but traded that equipment for newer equipment. Crider contends that the loss of trade-in value is the proper measure of damages, which Crider claims is $3,000.00 and $4,500.00, respectively.

Farm equipment dealer David Hoefling, who took the damaged disk in trade, valued the damaged disk at $12,000.00 and testified that he would have allowed a trade in value of $15,000.00 for a disk of the same age but in good condition. Thus, the loss of trade-in value was $3,000.00. The Downens did not have the disk repaired, and may recover only the actual loss sustained. *See id.* at 101. They are entitled to recover $3,000.00 from Crider for damage to the disk.

The valuation evidence with regard to the ripper is derived from the testimony of Royal Downen and Anthony Downen. Although Crider argues that this testimony lacks credibility because it did not take into account sufficient depreciation, Crider did not offer an alternative valuation. Anthony testified that the ripper was worth

$11,500 to $12,000.00 before the damage and $7,000.00 afterward (a maximum difference of $5,000.00). Royal testified that the ripper was worth $11,000.00 to $11,500.00 before the damage and $7,000.00 afterward (a maximum difference of $4,500.00). It would have cost $5,520.00 to repair the equipment, but the Downens did not incur this cost. Rather, they traded in the equipment. As such, the maximum amount of damage to the ripper supported by the evidence is $5,000.00.

We revise the portion of the damages award attributable to the farm equipment from $9,507.52 to $8,000.00.

## II.  Cost of Erosion Correction

Crider contends that the trial court erred when it awarded the Downens $5,200.00 in damages for costs they incurred to terrace and tile their property to alleviate erosion present four years after the construction project ended. In Crider's view, there is a lack of a causal relationship between the deposit of debris and the erosion experienced.

An injured party may recover for breach of contract damages that are the natural, foreseeable and proximate consequence of the breach, but "may not be placed in a better position than he would have enjoyed if the breach had not occurred." *Fowler v. Campbell,* 612 N.E.2d 596, 603 (Ind.Ct.App.1993). Crider points out that it satisfied its contractual obligation to redistribute the topsoil and to grade and contour the property to make it look better, and argues that the subsequent erosion is an ongoing and inevitable event. However, Crider redistributed the topsoil together with roughly 120 tons of construction debris, an extraordinary alteration to the normal topography. There is evidentiary support for the fact-finder's determination that the accelerated erosion was attributable to Crider's conduct.

Thus, the Downens were properly awarded compensation for correction of the erosion.

## III.  Diminution in Land Value

Finally, Crider contends that the trial court erred "when it awarded the Downens both their cost to repair the Property and their claimed diminution in the fair market value of the Property." Appellant's Brief at 20.

The law disfavors a windfall or a double recovery. *West American Ins. Co. v. Cates,* 865 N.E.2d 1016, 1021 n. 2 (Ind.Ct.App.2007), *trans. denied.* However, the cost of repair to correct the erosion problem did not fully restore the Downens' land to its former condition, that which would have existed absent the breach of contract. A large quantity of debris remained buried, but could be expected to surface after each heavy rainfall and annually when the fields were cultivated for planting. The terracing and tiling was necessary to permit the resumption of farming but did nothing to rid the land of 120 tons of debris.

The evidence presented at the damages hearing indicated that debris was present all across the 18.43 acre south tract, evidently having been spread in the redistribution of dirt and the grading process. Anthony testified that the land was worth $2,500.00 to $2,600.00 per acre before the dumping of debris and $1,400.00 to $1,500.00 afterward (providing for a maximum diminution of 18.43 × $1,200.00 = $22,116.00). Royal testified that the land was worth $2,400.00 to $2,500.00 per acre absent debris and $1,500.00 per acre afterward (providing for a maximum diminution of 18.43 × $1,000.00 = $18,430.00). The trial court awarded $18,430.00, which was within the scope of the evidence presented.

Nevertheless, Crider contends that the Downens' testimony must be dis-

carded because it lacks reference to any ascertainable standard such as a real estate appraisal.[1] A landowner is competent to testify to the value of his or her land. *Harper v. Goodin,* 409 N.E.2d 1129, 1134 (Ind.Ct.App.1980). Moreover, the Downens testified that they were life-long farmers, routinely attended farm auctions, and had been involved in condemnation proceedings involving some of their farmland because of the road construction. The trial court properly found the Downens competent to testify as to the value of their land.

### Conclusion

The trial court properly awarded damages for partial restoration of the property and for diminution in value and the amount of those damages was within the range of the evidence presented. However, the evidence on damage to personal property supports a maximum award of $8,000.00. Therefore, we reduce the award of damages by $1,507.52, providing for a revised damages award of $35,760.00.

Revised.

BAKER, C.J., and VAIDIK, J., concur.

---

1. Crider also suggests that evidence of diminution in real estate value should have been disallowed in its entirety because of out-of-court representations by the Downens' counsel. At the damages hearing, the parties' attorneys disagreed as to the substance of the out-of-court discussion. Nevertheless, Crider made no offer of proof and we are unable to discern prejudicial error based upon the record before us.