## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 10 2020, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Thomas F. Bedsole
Jenai M. Brackett
Maggie L. Smith
Darrian A. Smith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Laura B. Conway
Steven C. Earnhart
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Pines of Greenwood, LLC and Arbor Homes, LLC,

*Appellants-Defendants,*

v.

The Village Pines at the Pines of Greenwood Homeowners' Association, Inc.,

*Appellee-Plaintiff.*

November 10, 2020

Court of Appeals Case No. 20A-PL-373

Appeal from the Johnson Superior Court

The Honorable Marla K. Clark, Judge

Trial Court Cause No. 41D04-1111-PL-86

**Altice, Judge.**

# Case Summary

[1] This is an appeal after remand, stemming from long-running litigation between plaintiff The Village Pines at the Pines of Greenwood Homeowners' Association, Inc. (the HOA), a not-for-profit corporation, and defendants Pines of Greenwood, LLC (Developer) and Arbor Homes, LLC (Builder). In 2011, the HOA sued Developer and Builder for, as is relevant here, breach of contract involving a dispute over the neighborhood's covenants. The trial court entered judgment for Developer and Builder, and the HOA appealed.

[2] This court reversed, finding that Developer and Builder had breached the neighborhood's covenants, and remanded for a hearing on the HOA's damages. *Village Pines at the Pines of Greenwood Homeowners' Assoc., Inc. v. Pines of Greenwood, LLC*, 123 N.E.3d 145 (Ind. Ct. App. 2019) (*Village Pines I*). On remand, the trial court determined that the HOA incurred damages in excess of $1 million, comprised of the following amounts: $225,524.50 for assessments; $148,275.00 for late fees; $626,110.00 for interest on unpaid assessments; and attorney's fees, expenses, and costs of $87,683.01. Developer and Builder appeal and raise the following restated issues:

    I. Did the HOA have standing to recover damages?

    II. Was the trial court's determination of unpaid HOA assessments supported by the evidence?

    III. Was the interest rate used by the trial court and the imposition of late fees erroneous?

[3] We affirm in part, reverse in part, and remand.[1]

## Facts & Procedural History[2]

### *Provisions of the Neighborhood Covenants*

[4] In 2000, Developer and Builder began development of the neighborhood of Village Pines at Pines of Greenwood (the Neighborhood). Developer and/or Builder drafted The Declaration of Covenants, Conditions and Restrictions and Grant and Reservation of Easements for The Village Pines at the Pines of Greenwood (the Covenants or the Declaration) and recorded the Covenants in the Johnson County Recorder's Office in January 2000.

[5] The Covenants define a number of relevant terms: "Declarant" was defined as the Developer and provided that the Builder has "the same rights as Declarant hereunder"; "Owner" means "the Person or Persons, including Declarant, holding fee simple interest to a Lot"; "Development Period" means "the period of time during which the Declarant owns at least one [L]ot"; "Annual Assessment" means "a charge against a particular Owner and his Lot, representing a portion of Common Expenses which are to be levied among all Owners and their Lots . . . in the manner and proportions provided herein"; "Common Expenses" means, in part, "those expenses for which the [HOA] is responsible under this Declaration, including the actual and estimated costs of:

---

[1] We deny Developer and Builder's motion for oral argument by separate order.

[2] We borrow in part from our colleagues' opinion in *Village Pines I*.

maintenance, management, operation, repair and replacement of the Common Areas . . . and any Improvements thereon, or unpaid Special Assessments"; "Member" means "any Person holding a Membership in the [HOA]", and "Person" means a "natural individual or any other entity with the legal right to hold title to real property." *Prior Exhibits*[3] at 15-18.

[6] Article V of the Covenants sets forth relevant provisions regarding Assessments and includes the following:

> 5.1 <u>Personal Obligation of Assessments</u>. *Declarant*, on behalf of itself and all future Owners, *hereby covenants and agrees to pay*, . . . *to the Association, Annual Assessments and other amounts as required or provided for in this Declaration.* Amounts payable for Annual Assessments and Special Assessments (as generally defined in Sections 5.5 and 5.7, respectively) are generally referred to herein as "Assessments." *Other amounts payable by an Owner to the Association*, (or payable with respect to an Owner's Lot), *including late charges, fines, penalties, interest, attorneys fees and other costs and expenses incurred by the Association in collecting unpaid amounts* shall be added to the Annual or Special Assessments, charged to his Lot and shall be enforceable and collectible as Annual or Special Assessments....
>
> ***
>
> 5.5 <u>Annual Assessments/Commencement-Collection</u>. Annual Assessments, and any monthly installment related thereto, shall commence on the first day of the first calendar month following

---

[3] On April 6, 2020, this court ordered that the Record of Proceedings from *Village Pines I* be included in the record in this appeal.

the Closing of the sale of the first Lot. Thereafter, the Association is specifically authorized to enter into subsidy contracts or contracts for "in kind" contribution of services, materials, or a combination of services and materials with the Declarant or other entities for payment of Common Expenses.

*All Annual Assessments shall be assessed equally against the Members and their Lots based upon the number of Lots owned by each Member.* Annual Assessments for fractions of any month involved shall be prorated. Subject to the terms of any subsidy contract, *Declarant shall pay to the Association until the Applicable Date, an amount equal to the difference, if any, between the expenditures of the Association made pursuant to this Article V and the aggregate amount of the Annual Assessments collected by the Association*. . . .

***

5.8 <u>Time for Payments</u>. *Each installment of the Annual Assessment shall be due on the first day of the period covered by said installment.* The amount of any Assessment, late charge, fine, penalty or other amount payable by an Owner or Resident with respect to such Owner's Lot shall become due and payable as specified herein and *if said payment is not received, then said Owner shall also be responsible for any late charges, interest, fines, penalties or attorneys fees related thereto*.... Annual Assessments shall be paid and collected on a quarterly basis or at such other frequency as may be adopted by the Board.

*Id*. at 29, 31, 32-33 (emphases added).

[7]     The Covenants also provide specific procedures for their amendment. Under Section 12.2, notice of a proposed amendment must be provided to

homeowners, and adoption of a resolution requires consent of 67% of the

Members. However, the Covenants provide an exception to that required vote:

> 12.3 <u>By Declarant</u>. Notwithstanding anything herein to the contrary, *Declarant hereby reserves the right until the expiration of the Development Period to make such amendments to this Declaration* as may be deemed necessary or appropriate by Declarant, *without the approval of any other person or entity*, in order to bring Declarant into compliance with the requirements of any statute, ordinance, regulation or order of any public agency having jurisdiction thereof, or *to correct clerical or typographical errors in this Declaration* or any amendment or supplement hereto; *provided that Declarant shall not be entitled to make any amendment which* has a materially adverse effect on the rights of any Mortgagee, nor *substantially impairs the benefits of this Declaration to any Owner or substantially increases the obligations imposed by this Declaration on any Owner*. Each amendment to the Declaration shall be executed by Declarant only in any case where Declarant has the right to amend this Declaration without any further consent or approval, and otherwise by the Association. All amendments shall be recorded in the Office of the Recorder of Marion County, Indiana, and no amendment shall become effective until so recorded.

*Id*. at 47-48 (emphases added).

## *Background*

[8]    During the Development Period, from January 2000 to November 2009, Developer and Builder controlled the HOA and, among other things, appointed the HOA's Board of Directors (the Board). On May 18, 2006, the HOA held a meeting, the minutes of which reflected that a discussion occurred regarding whether Developer and Builder were required to pay Assessments on unsold

Lots. On July 2, 2008, Developer and Builder recorded a Second Amendment[4] to the Covenants (the Second Amendment) in the Recorder's Office. It stated, in part:

> WHEREAS, *Declarant's intent at the time the Declaration was* prepared and recorded was to provide for Declarant to fund the deficit of the Association's Common Expenses, if any, prior to the Applicable Date, and *that Declarant would not otherwise be responsible for payment of the Association's Common Expenses*; and
>
> WHEREAS, the Declaration contains certain clerical and typographical errors.
>
> WHEREAS, such errors result in unintended ambiguities regarding Declarant's obligations to contribute toward the Association's Common Expenses;
>
> WHEREAS, Declarant wishes to correct such errors in the Declaration;
>
> WHEREAS, pursuant to the terms of Section 12.3 of the Declaration, Declarant has the right until the expiration of the Development Period to make amendments to the Declaration as may be deemed necessary or appropriate by Declarant, without the approval of any other person or entity, to correct clerical errors in the Declaration; and

---

[4] In July 2007, Developer recorded a First Amendment to the Covenants, regarding parking, nuisances, and trash containers, and followed Section 12.2's required procedure for amendments.

WHEREAS, Declarant represents that the Development Period has not terminated.

NOW THEREFORE, Declarant is hereby entering into this Second Amendment as follows:

* * *

3. The first sentence of Section 5.1, <u>Personal Obligation of Assessments</u>, shall be deleted and replaced with the following:

Each Owner (*other than Declarant*), by accepting title to a Lot or any interest therein, whether or not it shall be expressed in the deed or other instrument conveying title, shall be deemed to covenant and agree to pay to the Association, Annual Assessments and other amounts as required or provided for in this Declaration.

4. The first sentence of Section 5.5 <u>Annual Assessments/Commencement-Collection</u>, shall be deleted and replaced with the following:

Annual Assessments, and any monthly installment related thereto, shall commence on the first day of the first calendar month following the Closing of the first sale of a Lot *to a person other than Declarant*.

*Id.* at 61-64 (emphases added).

On November 5, 2009, control of the HOA was turned over to the homeowners of the Neighborhood. On November 4, 2011, the HOA filed a complaint against Developer and Builder (sometimes collectively Defendants) asserting, as

is relevant here, breach of contract,[5] for purporting to amend the Covenants without a vote of the Members and for failure to pay the Annual Assessments on unsold Lots.

[10] A bench trial was held in May 2017. Board member Megan Judson testified that Annual Assessments were calculated based on the annual budget. The court admitted over objection Exhibit 10, a spreadsheet, which listed addresses/Lot numbers, the transfer dates when the Lots were transferred from Developer or Builder to third parties, and yearly Annual Assessment amounts as follows: $32.50 per Lot per month for 2001-2001, $41.00 per Lot per month for 2002-2004, and $45.00 per Lot per month for 2005-2009. Exhibit 10 reflected that Developer and Builder owed unpaid Assessments of $245,982.50 (a computation involving taking the number of months that listed Lots were owned by Developer/Builder and multiplying by the appropriate monthly Assessment amount) and late fees at $25.00 per month totaling $148,275.00. Judson testified that the Second Amendment was never approved by the HOA.

[11] On October 2, 2017, the trial court entered judgment in favor of Developer and Builder, finding that, while Developer and Builder did not pay Assessments to the HOA as required by the Covenants from June 2000 to November 2009, they did make Deficit Funding and in-kind contributions for the years 2000, 2001, 2002, 2003, and 2005. The trial court determined with regard to the HOA's

---

[5] The *Village Pines I* court noted that the complaint was not included in the record before it. We likewise do not have the complaint and do not know the precise allegations.

alleged damages: (1) the HOA "did not suffer any actual damages because its budget was fully funded every year" given that "the deficit Funding system . . . satisfied all actual expenditures of the [HOA] on an annual basis[,]" and (2) the HOA also "seeks to recover [] damages to its members," namely having to pay higher assessments due to Developer/Builder's failure to pay assessments, and that "[t]he [HOA] has standing to sue on certain issues, but does not have standing to recover monetary damages arguably incurred by individual members." *Judgment Order* at 18. The HOA appealed.

## *First Appeal*

[12] This court in *Village Pines I* determined, as is relevant to this appeal, that the Second Amendment – which removed Developer and Builder from the definition of Owners for purposes of Article V and the Annual Assessment obligations – did not merely clarify clerical or typographical errors, but rather, increased the obligations on other Member homeowners, and thus, pursuant to Section 12.2, a vote of 67% of Members of the HOA was required. Therefore, Developer and Builder, in recording the Second Amendment, which was not approved by Members of the HOA, breached the Covenants' amendment procedure.

[13] The *Village Pines I* court rejected Developer and Builder's argument that the HOA had not shown that it suffered any damages since the HOA's annual budgets were fully funded (i.e., there were no unpaid or outstanding amounts). The court reasoned that the Covenants required Annual Assessments to be assessed equally against the Members and their Lots and that Builder and

Developer were Members or Owners under the Covenants. Therefore, the court concluded

> [a]fter due consideration of the stipulated exhibits, evidence, and testimony presented at trial, and in light of the court's finding that [Developer] and [Builder] did not pay assessments to the Association from June 2000 to November 2009, we are not persuaded that the HOA did not suffer any damages.

*Id*. at 157 (citation to record omitted). The *Village Pines I* court reversed the trial court's breach of contract determination and remanded for a damages hearing.

Developer and Builder filed a petition for rehearing, asserting that the court remanded for a damages hearing "without addressing the trial court's findings and conclusions as to standing." *Pet. for Rehearing* at 4. Developer and Builder urged that damages "belong to individual Owners" who paid higher Assessments than they otherwise would have, and such individualized proof of damages by the Owners precluded the HOA from having associational standing. *Id*. at 9.

The HOA filed a response maintaining that, while its complaint had sought damages on its own behalf and, alternatively, on behalf of its Members, it had appealed only that portion of the trial court's order finding that *the HOA* did not suffer any damages and that the *Village Pines I* court agreed with the HOA that it had been damaged by the breach of contract. The HOA argued that the *Village Pines I* court did not need to address whether the HOA had associational standing on behalf of its Members and, thus, rehearing was not needed. This

court denied the petition for rehearing without opinion.[6] Transfer was not sought.

### *Damages Determination on Remand*

[16] On October 22, 2019, the trial court held a hearing on damages. The HOA argued that Developer and Builder were required under the Covenants to pay Annual Assessments to the HOA, the amount of which was "determined by the Board [] years ago." *Transcript* at 24. In support of the amount of damages, the HOA offered Exhibit 10 that was admitted during the prior trial as evidence of the total amount owed for unpaid Assessments and late fees.

[17] The HOA also presented the testimony of Judson, a member of the Board and the property manager for the Neighborhood. Judson testified that she was familiar with the Covenants and stated that, in the past, the Board charged an interest rate of 18% on unpaid Assessments and that the current late fee charged by the Board was $25.00 per month. She explained that the process followed to collect unpaid Assessments from Member homeowners was to send a statement reflecting the balance owed and the late fee being assessed. If the Member still did not pay, then they would receive additional letters, and eventually be sent to an attorney for legal proceedings. The HOA asked the trial court to enter

---

[6] Developer and Builder requested oral argument on the petition for rehearing, which was denied as not permitted under the Appellate Rules.

judgment in the amount of $1,379,876.42, consisting of unpaid assessments, late fees, and interest, plus attorney's fees.

[18] Developer and Builder asserted that the HOA *itself* did not incur any damages because the Assessments were based on the budget and the Common Expenses, and all the Common Expenses for every year through 2009 were paid, since the Developer and/or Builder paid any deficit. Rather, if anyone was damaged, it was homeowners who overpaid Annual Assessments due to the fact that Developer and Builder were not paying Assessments and any recovery "should go back into the pockets of the people who overpaid," not the HOA. *Transcript* at 17. Counsel for Developer and Builder maintained that "any award here would result in a windfall to the [HOA]." *Id*. at 18.

[19] In support of their position that the HOA did not suffer damages, Developer and Builder offered several exhibits. One summarized the HOA's actual expenses for five years (2000, 2001, 2002, 2006, and 2008). Another was a table that compared the amount charged to homeowners per Lot against "the amounts that should have been charged to the homeowners had the [Developer and Builder] … been paying monthly [] expenses[.]" *Id*. at 16. The HOA objected to the exhibits, arguing that expenses incurred by the HOA were not relevant to the damages hearing. The trial court admitted the exhibits over objection.

[20] In response to Developer and Builder's argument that the HOA suffered no damages, the HOA argued that the court in *Village Pines I* already rejected that

argument and "clearly stated that the Defendants' failure to pay assessments was the damages[.]" *Id*. at 24. The HOA maintained that it was "allowed to collect its annual assessments" and "[t]he [] actual expenses are not to be considered." *Id*. at 30. In response to the suggestion that an award to the HOA would result in a "windfall," the HOA argued that Developer and Builder were "attempting to shoehorn an equitable argument into this breach of contract case." *Id*. at 24.

[21] With regard to late fees being sought by the HOA, Developer and Builder argued that "there were no collection efforts that might justify late fees[,]" no statements were sent and no late fees were ever assessed. *Id*. at 26. Therefore, they argued, the fees being sought "bear no relation" to collection efforts and constitute a penalty. *Id*. at 27. Further, with regard to interest being sought by the HOA, they argued that, while Indiana courts have found an interest award to be justified where the party had to pay the cost of borrowing money to fund the budget, here all the expenses were paid and thus no interest should be awarded as damages.

[22] The HOA offered two exhibits concerning attorney's fees, an affidavit and billing statement, that were admitted over objection, evidencing that they had incurred attorney's fees in the amount of $87,683.01. Counsel noted that the case was first filed in 2011 and had been through various motions, including a motion for summary judgment, a request for interlocutory appeal, mediation, and an appeal.

[23]     The parties submitted proposed orders and, on January 17, 2020, the court issued an Order on Damages, finding, in part: (1) Under the Covenants, the Board determines the amount of the Annual Assessments; (2) Exhibit 10 reflects Developer and Builder's dates of Lot ownership; (3) and Builder and Developer did not pay Assessments to the HOA from June 2000 through November 2009 but, in lieu of per-Lot Assessments, they paid the HOA $53,428.00 in Deficit Funding and in-kind contributions for the years 2000, 2002, 2003, and 2005. Giving Builder and Developer credit for the $53,428.00 contributions, the trial court determined that Builder and Developer owed $225,524.50 in unpaid Assessments.

[24]     The court also expressly stated:

> 11. The Court rejects Defendants' argument that awarding damages to the [HOA] represents a windfall because the amounts they owed under the Declaration were collected from other Owners. The Board determined the amount of the annual assessment and the members of the Board were appointed by Defendants. Defendants cannot escape their contractual liability because the Board which they appointed set the annual assessment based on Defendants' own erroneous interpretation of the Declaration as not requiring them to pay assessments.
>
> 12. Defendants also argue that now that the common expenses for the past years are known, the actual common expenses is [sic] the relevant figure. However, the Declaration provides that the Board sets the amount of the annual assessment and this is the amount that each Owner must pay.

*Appellant's Appendix Vol. 2* at 23.

The court found that the HOA charged delinquent Owners 18% annual interest and $25.00 per month in late fees. Using those figures, the court determined damages as follows:

    a. $225,524.50 for assessments,

    b. $148,275.00 for late fees as allowed by the Declaration,

    c. $626,110.22 for interest at the rate of 18% per annum as allowed by the Declaration through October 22, 2019, plus

    d. interest at a rate of $111.22 per day from October 22, 2019 to the date of judgment.

*Id.* at 22. The court found that the $87,683.01 in attorney's fees incurred by the HOA was reasonable given the hourly rate, time spent, and complexity of the case. Developer and Builder now appeal. Additional facts will be provided below as needed.

# Discussion & Decision

Our review of a damages award is limited. *Crider & Crider, Inc. v. Downen*, 873 N.E.2d 1115, 1118 (Ind. Ct. App. 2007). We do not reweigh the evidence or judge the credibility of witnesses, and we will consider only the evidence favorable to the award. *Id.* A damage award must be supported by probative evidence and cannot be based upon mere speculation, conjecture, or surmise. *Id.* We will reverse an award of damages only when it is not within the scope of the evidence before the finder of fact. *Id.*

# I. HOA's Standing to Recover Damages

[27] Developer and Builder assert that the HOA does not have standing to recover damages and, consequently, the trial court's damages order on remand was in error. Their argument is this: Because all of the Neighborhood's expenses were funded during the years at issue, through deficit funding or otherwise, the HOA did not suffer any *of its own* damages, and, rather, it is *the homeowners*, if anyone, who suffered damages by having to pay higher assessments. Therefore, they argue, the HOA can only recover if it has associational standing, which Developer and Builder maintain the HOA does not have for various reasons but primarily because individual homeowners would need to establish particularized damages. We reject the premise on which the entire argument is based, namely that the HOA did not suffer any damages because the Neighborhood's expenses were funded. Rather, we agree with the HOA that this issue already has been raised and decided adversely to Developer and Builder.

[28] Specifically, in *Village Pines I* the court stated:

> To the extent that Pines and Arbor Homes . . . argue that "because there were no unpaid, unbudgeted, or outstanding amounts, the HOA had not shown that it could have suffered any damages," . . . we note that the articles of incorporation and bylaws of a non-profit corporation constitute a contract between the corporation and its members and among the members themselves, . . . and that a party who fails to make payments as required by a contract is guilty of a breach thereof. . . . [I]n light of the court's finding that [Developer] and [Builder] did not pay assessments to the Association from June 2000 to November

2009, we are not persuaded that the HOA did not suffer any damages.

123 N.E.3d at 157 (internal citations omitted). Developer and Builder requested rehearing, arguing that the *Village Pines I* court failed to address the standing issue. The HOA's response confirmed that it was not seeking recovery on an associational standing basis (i.e., recovery on behalf of its members), and this court denied the petition for rehearing. Builder and Developer did not seek transfer.

[29] It is well settled that, on remand, the trial court was required to apply the law of the case. *Learman v. Auto-Owners Ins. Co.*, 769 N.E.2d 1171, 1175 (Ind. Ct. App. 2002) ("Upon remand following an appellate decision, the law of the case doctrine requires a trial court to 'apply the law as laid down by the appellate court.'"), *trans. denied*. The doctrine precludes reexamination of issues on remand and subsequent appeal which were either expressly or by necessary implication settled as a matter of law on prior review. *Guarantee Trust Life Ins. Co. v. Palsce*, 641 N.E.2d 1266, 1268 (Ind. Ct. App. 1994), *trans. denied*.

[30] The cause of action, here, belongs to the HOA.[7] The HOA's claim is not whether and to what extent each individual homeowner was damaged. The

---

[7] Section 5.11 of the Covenants provides that it is the duty of the Board "to enforce the collection of any amounts due under this Declaration[.]" *Prior Exhibits* at 33-34.

dues are owed to the HOA, and the HOA is the party that has been damaged by the Developer and Builder failing to pay Assessments on unsold Lots.[8]

## II. Damages Amount

[31] Developer and Builder argue that, if the HOA is permitted to recover damages, the trial court's calculation was not supported by the evidence and/or was mathematically incorrect and remand is once again necessary.

[32] The HOA's evidence of unpaid assessments at the damages hearing (and at trial) was Exhibit 10, the spreadsheet that identified the Assessment amount for the relevant years as determined by the Board (whose members were appointed by Developer and Builder) and listed the Lots at issue and the number of months that Developer and Builder should have but did not pay the corresponding Assessment. All totaled, Exhibit 10 reflected an amount owing of $245,982.50 in unpaid Assessments.[9]

[33] The trial court's order on damages, however, reflected that the amount due was $278,952.50. It is not clear whether this was a mathematical error or whether the trial court utilized the figures in Exhibit 10 to arrive at a different total amount due. In either case, we find that remand is warranted to either clarify

---

[8] Because we find that the HOA is not seeking damages on behalf of its members, we need not reach Developer and Builder's argument that the HOA does not have associational standing.

[9] We note that the HOA's Trial Exhibit 28, concerning an interest calculation, also utilizes $245,982.50 as the amount owing in unpaid Assessments.

how the court arrived at $278,952.50 from Exhibit 10 or correct the amount due for unpaid Assessments to $245,982.50.

[34] We note that the trial court made an adjustment to the total amount due by crediting Developer and Builder with $53,428.00 that they paid in Deficit Funding and/or in-kind contributions during the relevant time period. We agree that making this adjustment was appropriate but note that the trial court credited the $53,428.00 against $278,982.50, for a net owing of $225,524.50. If the court should revise the unpaid Assessments to $245,982.50, then the net amount owing should be reduced to $192,554.50.

## III. Interest and Late Fees

[35] Developer and Builder assert that, even if we affirm an award of damages for unpaid Assessments, we should reverse the trial court's determination of $626,110.22 in interest and $148,275.00 in late fees.[10] Section 5.8 of the Covenants provides that Annual Assessments are "paid and collected on a quarterly basis" and "are due on the first day of the period covered by said installment" and that, if payment is not received, then the Owner "shall also be responsible for any late charges, interest, fines, penalties or attorneys fees related thereto." *Prior Exhibits* at 32-33. The Section continues, "Unless paid, when due, any such amount shall bear interest *at a rate specified by the Board*, but

---

[10] While Developer and Builder assert generally that the "additional awards" of interest, late fees, and attorney's fees were in error, *Appellant's Brief* at 33, they make no separate argument regarding attorney's fees. Accordingly, any claimed error as to the attorney's fee award is waived. Ind. Appellate Rule 46(A)(8).

in no event greater than eighteen percent (18%) per annum from its original due date until date of payment." *Id*. at 33 (emphasis added). Section 5.9 of the Covenants provides for late fees of $25.00 per month.

### *a. Interest*

[36] Ind. Code § 24-4.6-1-101 provides for "interest on judgments for money whenever rendered." Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Song v. Iatarola*, 76 N.E.3d 926, 939 (Ind. Ct. App. 2017), *aff'd on reh'g*, 83 N.E.3d 80, *trans. denied*. It is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id*.; *see also* I.C. § 24-4.6-1-103(b). The current statutory interest rate is 8% when there is no contract by the parties specifying a different interest rate. *Song*, 76 N.E.3d at 939; *see also* I.C. § 24-4.6-1-101. Our court has stated:

> It is well-settled that an award of prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. The test for determining whether an award of prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. The award is considered proper when the trier of fact does not have to exercise its judgment to assess the amount of damages. Importantly for purposes of our review, an award of prejudgment interest is generally not considered a matter of discretion.

*Song*, 76 N.E.3d at 939 (internal citations omitted).

[37] Here, the trial court on remand found that "[a]t turnover and for a time thereafter," the interest charged to delinquent Owners by the HOA was 18% per annum. *Appellant's Appendix* at 20. Applying that rate, the court calculated interest that accrued each year from 2001 to October 22, 2019 (the date of the damages hearing), ordering Developer and Builder to pay "$626,110.22 for interest at the rate of 18% per annum as allowed by the Declaration through October 22, 2019, plus interest at a rate of $111.22 per day from October 22, 2019 to the day of judgment[.]" *Id.* at 23. Developer and Builder assert that this was erroneous, arguing that there was no evidence showing that, during the years at issue, the Board of Directors ever "specified" or set an interest rate at 18% per annum as required by the Covenants. *Prior Exhibits* at 33. They continue, "the HOA offered no proof that the Board of Directors ever set any rate[,]" and "[w]ithout such proof, interest cannot be recovered under the plain language of the Covenants." *Appellant's Brief* at 34.

[38] We agree with Developer and Builder to the extent that, while the Covenants allow *up to* 18% interest, there was no evidence at the damages hearing that 18% was set or "specified" by the Board as outlined in Section 5.8 or that the Board was charging 18% interest on unpaid Assessments in 2001, which is the starting year of the trial court's interest calculation. That said, we disagree with Developer and Builder that interest cannot be recovered at all. Sections 5.1 and 5.8 of the Covenants expressly provide for recovery of interest on unpaid Assessments. The relevant question is: starting when and at what rate?

[39] Based on the record before us, we find that it is neither reasonable nor appropriate to start the interest clock ticking in 2001. While the HOA suggests that the Assessments were "due" starting in 2001, they were not "demanded" until a later date, with discussions about it occurring in 2006 at a meeting and the HOA's complaint being filed in November 2011. Based on the record before us, we find that prejudgment interest should begin no earlier than the date the complaint was filed. While the Covenants allow for a rate up to 18%, there is no evidence that the Board in fact "specified" that rate. *Prior Exhibits* at 33. As Developer and Builder observe, the only evidence presented regarding the interest rate was Judson's testimony that "in the past" – with no date or years specified – the Board charged an interest rate of 18%. *Transcript* at 20. Based on these facts and circumstances before us, and where the contract – here the Covenants – did not specify a rate, we find that the statutory rate of 8% should be used. I.C. § 24-4.6-1-101.

[40] We reverse the interest award and remand for the trial court to recalculate interest and apply 8% interest rate starting in November 2011.

### b. Late Fees

[41] As to late fees, Section 5.9 of the Covenants provides that "[a]ny installment of an assessment provided for in this Declaration shall be delinquent if not paid within fifteen (15) days of the due date as established by the Board[,]" and the Board "shall assess" a $25.00 late charge for each thirty days "for any delinquent payments[.]" *Prior Exhibits* at 33. Exhibit 10 calculated a monthly $25.00 late fee per Lot on unpaid Assessments starting in 2000, totaling

$148,275.00, which amount the trial court ordered Developer and Builder to pay.

[42] Developer and Builder argue that, for the years in which they failed to pay Annual Assessments, the HOA never considered any assessments to be "due" from Developer and Builder, and without a "due" date, the HOA cannot meet the conditions precedent under the plain language of the Covenants for imposition of late fees. Furthermore, they contend that, even if the Covenants permitted the HOA to impose late fees, the late fees under the circumstances of this case were excessive and, further, constitute an impermissible penalty in light of the fact that Developer and Builder, through their deficit funding obligation, ensured that the HOA had sufficient operating funds.

[43] In *Gaddis v. Stardust Hills Owners Ass'n, Inc.*, 804 N.E.2d 231 (Ind. Ct. App. 2004), a homeowners' association brought a small claims action against a homeowner to collect $100 of unpaid dues and a $2.00 per day late fee. The trial court entered judgment for the HOA, and on appeal the homeowner asserted that the late fee was an unenforceable penalty, noting the HOA's actual loss was disproportionate to the amount of the late fee. This court affirmed, and in upholding the late fee award, quoted from a landlord/tenant case for the proposition that "the late fee is intended to compensate Landlord for the administrative expense and inconvenience associated with untimely rent, including late payment notices and additional bookkeeping, and for the loss of use of rental income[,]" which "may affect a Landlord's ability to meet its operating expense." *Id*. at 235 (quoting *Gershin v. Demming*, 685 N.E.2d 1125,

1131 (Ind. Ct. App. 1997)). The *Gaddis* court found such reasoning "equally applicable" to the case at hand, where the late fee charged by the HOA for late payment of annual dues helped pay "for the maintenance of common areas and other community services." *Id.* Here, Developer and Builder urge that none of the factors that justified the imposition of the late fees in *Gaddis* are present in this case. We agree.

[44] Judson testified at the damages hearing that when a homeowner did not pay, extra work was required on her or the Board's part to collect. For instance, a notice was generated and sent, indicating the overdue Assessment along with a $25.00 late fee, which late fee would be imposed again the next month if the Owner still failed to pay, until eventually it was turned over to an attorney for collection. Here, over the years, no notice was ever sent, and no corresponding work or effort was expended by the HOA to collect the Developer and Builder's unpaid Assessments. Also, the HOA's obligations and expenses were fully paid during the relevant period such that Developer and Builder's failure to pay did not disrupt the HOA's ability to pay for maintenance of common areas. Based on the facts and circumstances, we find that charging a repeating monthly late fee per Lot, starting on some Lots in 2000, on over three hundred Lots constitutes an impermissible penalty. Accordingly, we vacate the award of $148,275.00 in late fees.

[45] Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this decision.

Riley, J. and May, J., concur.